Argued April 19, affirmed October 1, 1979

# STATE OF OREGON,
## *Respondent,*
### *v.*
# VANE OLIVER OSTROM,
## *Appellant.*

## (No. 78-05-08890, CA 12542)

600 P2d 910

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the briefs was Gary D. Babcock, Public Defender, Salem.

Stuart R. Chandler, Certified Law Student, argued the cause for respondent. With him on the briefs were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Thomas H. Denney, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph, Judges.

THORNTON, J.

**THORNTON, J.**

Defendant was convicted on stipulated facts of one count of Criminal Activity in Drugs following denial of his motion to suppress the seized drugs and a pistol found in his possession. He appeals, assigning the following errors:

1) Denying his motion to suppress the seized drugs and pistol;

2) Refusing to admit into evidence a tape recording of a police radio robbery report;

3) Specifying May 1, 1979, as the date of the first payment of $30 on $500 fine.

The essential facts may be summarized as follows:

Trooper Taylor of the Oregon State Police was traveling northbound on I-5 on May 30, 1978, at 7:45 p.m., when he observed defendant entering the freeway northbound on the Coliseum ramp. Taylor testified that he believed defendant was traveling a fairly "high rate of speed" on the ramp and "slowed sharply" upon seeing him. He estimated, on the basis of clocking defendant's approach for a brief interlude of two or three hundred feet, that he had been traveling approximately 65 miles per hour. After defendant gained Taylor's attention, Taylor noticed that defendant "was acting unduly nervous about the fact that I was following him." Taylor became suspicious when he noticed that defendant "moved around in traffic in front of me, almost continually watching me in either of two mirrors." Defendant seemed to be squirming around in his seat and moving things in the car. Taylor made these observations as he traveled approximately two to three car lengths behind defendant, for about six miles. He radioed to Office Communications Center for possible warrants and found none in relation to the vehicle or its registered owner, the defendant. He did, however, receive from the state police (relayed from the Center) information of a robbery which

occurred at the Bomber Gas Station at 7:30 that evening and he reported receiving the following information:

A suspect described as a white male of medium height and build with long dark brown hair and a moustache, wearing a white T-shirt, dark colored sweater or slipper jacket, and perhaps blue jeans, was armed and last seen traveling in a black-over-gold Buick or Pontiac, license number unknown.

Taylor testified that he observed defendant to be a white male with long dark brown hair and a moustache, wearing a white T-shirt, and driving a similar car with Washington plates.

Officer Knowles, from the Clackamas County Sheriff's Office, testified the information he gathered at the scene of the robbery additionally seemed to indicate that there were two robbery suspects, and that the getaway car was last seen headed southbound on Highway 99E; that the robber or robbers were driving an older model General Motors product, black over gold or yellow, perhaps pastel green, and the license plate was not visible because it was tied down. Taylor stopped defendant in the area of Jantzen Beach. He testified that he notified his office that he was stopping a "black over gold General Motors product." As Taylor approached defendant's automobile he observed a dark-colored jacket, a blue zippered jacket, in the seat next to defendant.

The main thrust of defendant's argument on the unlawfulness of the seizure is that he was actually stopped on mere suspicion and without a proper base for either probable cause or reasonable suspicion that he had committed a felony.

 LAWFULNESS OF THE SEARCH: We conclude that the trial judge did not err in denying defendant's motion to suppress. The trial judge made an unequivocal finding that there was a traffic violation

justifying the stop, which was supported by the evidence. The stop was authorized by both the traffic infraction committed in the officer's presence and reasonable cause based on the police radio report of the Bomber gas station robbery. The defendant and his car fitted the description broadcast on the State Police radio. Further, together with the other circumstances, the latter gave the officers probable cause to search defendant's vehicle for a weapon and other evidence of the crime. *State v. Greene,* 285 Or 337, 591 P2d 1362 (1979).[1]

ADMISSIBILITY OF POLICE RADIO BROADCAST: An examination of the record establishes that there were two different radio broadcasts involved: 1) a broadcast from the Clackamas County Communications Center; 2) a broadcast from the State Police Office Communication Center.

As we understand it, after the County Communications Center broadcasted the information concerning the Bomber robbery, the Center telephoned this information to State Police headquarters. The State Police then broadcast some of this information to its own personnel, including Taylor. Clackamas County made a tape recording of at least some of its broadcast but the State Police did not make a similar recording of its broadcast. So far as we can glean from the record, Taylor was acting solely on the basis of the State Police broadcast and did not receive the county's broadcasts.

Defendant sought unsuccessfully to introduce into evidence what purported to be the tape recording of the county's broadcasts for the purpose of impeaching Taylor's testimony. We have listened to this exhibit in its entirety. We find nothing on this tape which is

---

[1] In *State v. Greene,* 285 Or 337, 591 P2d 1362 (1979), the court said:

" * * * [A] search of an automobile may be made without a warrant if (1) the officers have probable cause to believe that the vehicle contains contraband, stolen goods, evidence of crime, etc., and (2) that there are exigent circumstances present which require that the vehicle be searched without obtaining a warrant. * * * " 285 Or at 340.

contrary to Taylor's testimony concerning the report he received via radio from State Police headquarters which might even remotely be considered as impeaching evidence. Therefore, we need not consider whether the trial court erred in ruling that ORS 165.545(2)[2] prohibited the introduction of this exhibit into evidence.

As to the third assignment, *viz,* the court's order specifying May 1, 1979, as the date of the first payment of $30 on a $500 fine, defendant complains that his payments would commence while he is still in jail, and that this is prohibited by ORS 161.675(1)[3] unless there is a clear finding by the court that the defendant is able to pay. The trial judge made no such finding here.

Defendant's contention must fail. Defendant did not make timely objection as required by ORS 137.106(3). *See State v. Starn,* 37 Or App 914, 587 P2d 1031 (1978). *See also State v. Keys,* 41 Or App 379, 597 P2d 1266 (1979); *State v. Ivie,* 38 Or App 453, 590 P2d 740 (1979).

Affirmed.

---

[2] ORS 165.545(2) provides:

"No recording of telephonic or radio conversation recorded by fire or police governmental entities shall be admissible in evidence in any court of this state."

[3] "When a defendant is sentenced to pay a fine or costs or ordered to make restitution, as defined in ORS 137.103, the court may order payment to be made forthwith or within a specified period of time or in specified instalments. If a defendant is sentenced to a term of imprisonment, an order of payment of a fine, costs or restitution shall not be enforceable during the period of imprisonment unless the court expressly finds that the defendant has assets to pay all or part of the amounts ordered at the time of sentencing." ORS 161.675(1).